Christopher A. Villasenor, Esq. (SBN 147118)
**JURGENSEN VILLASENOR, APC**
**A PROFESSIONAL CORPORATION**
3111 Camino Del Rio North, Suite 310
San Diego, CA 92108
Telephone: (619) 563-4150
Facsimile: (619) 280-1654

Attorneys for Plaintiff
RICARDO A. CAMPBELL

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICARDO A. CAMPBELL, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>LEDWIN E. OVIEDO, an individual; LOIG, LLC, A Delaware limited liability company; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. **'11 CV0010 BTM NLS**<br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY TRIAL DEMANDED** |

### INTRODUCTION

1. This action is brought by plaintiff RICARDO A. CAMPBELL (hereinafter "Plaintiff" or "Campbell") against LEDWIN E. OVIEDO (hereinafter "Oviedo") and LOIG, LLC, a Delaware limited liability company (hereinafter "LOIG")(Oviedo and LOIG are hereinafter referred to each as "Defendant" or collectively as "Defendants") related to an investment scam wherein Defendants issued a counterfeit and fraudulent standby letter of credit to Plaintiff in an attempt to purchase fifty million dollars worth of rough emeralds, causing damages to Plaintiff. Plaintiff is informed and believes and hereafter alleges as follows:

### JURISDICTION AND VENUE

2. Jurisdiction is based on federal question jurisdiction pursuant to the Racketeer Influenced Corrupt Organizations Act ("RICO") 18 U.S.C. § 1964 and 28 U.S.C. § 1331, and diversity of citizenship pursuant to 28 U.S.C. § 1332. The federal questions arise out of claims by Plaintiff against Defendants arising out of 18 U.S.C. §§ 471, 472, 473, 1341, 1343, and 1962.

COMPLAINT FOR DAMAGES                                                                                                       1

3. Plaintiff is a citizen of the State of California and Defendants are residents or citizens of the State of New York or have a principal place of business in the State of New York. More than $50,000 is at controversy, exclusive of costs and interest. Jurisdiction over state and common law claims is predicated upon the Court's supplementary jurisdiction.

4. This court has personal jurisdiction over each of the named defendants because they, and each of them, do business in this judicial district and have used the means and instrumentalities of interstate commerce, including but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets within this judicial district; and therefore they, and each of them, have purposefully availed themselves of the laws of this judicial district.

5. Venue is proper in this Court under 18 U.S.C. § 1965 and 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted arise in this district, Defendants transacted their affairs in this district, and/or Defendants purposefully directed their business activities to Plaintiff within this district.

## THE PARTIES

6. Plaintiff is an individual residing in Chula Vista, San Diego County, State of California within this district. Plaintiff serves as an agent and broker for the purchase and sale of expensive gemstones, art and other personal and real property.

7. Plaintiff is informed and believes that Oviedo is an individual residing in New York City, New York.

8. Plaintiff is informed and believes that LOIG is a limited liability company that is currently duly organized and existing under the laws of the State of Delaware, with its principal place of business at 445 Park Avenue, 9th and 10th floors, New York, 10022, State of New York. Plaintiff is informed and believes that LOIG holds itself out as a group of "professionals" who focus on funding special projects in the U.S. and globally. Based upon LOIG's website at www.loigfunds.com, the company provides unique, unconventional and reliable private funding services to individuals and companies.

9.  The full extent of the facts linking the fictitious named defendants with the foregoing causes of action and/or true names or capacities, whether individual, corporate, partnership, associate, member, or otherwise, of defendants DOES 1 through 50 are unknown to Plaintiff, who therefore sues defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the defendants designated herein as DOE is negligently, wantonly, recklessly, tortuously and unlawfully responsible in some manner for the events and happenings herein referred to and proximately caused injury and damages to Plaintiff as herein alleged. Plaintiff will hereafter seek leave of Court to amend this Complaint to show said defendants' true names and capacities after the same have been ascertained.

10. Plaintiff alleges on information and belief that each Defendant named herein, including those named as DOES, is, and at all relevant times mentioned was, the agent, servant, co-conspirator, and/or employee of each of the other named Defendant and, in doing the things alleged herein, was acting within the course and scope and with the knowledge of the other named Defendant. Plaintiff further alleges on information and belief that each Defendant named herein aided and abetted the others by authorizing and/or ratifying the acts herein alleged.

11. On information and belief, Oviedo with respect to LOIG, performed the following acts among other things: (a) commingled funds and other assets; (b) diverted company funds to other corporate entities for other than legitimate corporate purposes; (c) treated company assets as personal assets; (d) failed to observe formalities and adhere to the operating agreement; (e) failed to maintain an arm's-length relationship with the company or between entities; (f) failed to obtain authority to issue units or to subscribe to or issue the same; (g) used the company structure as a subterfuge of illegal transactions; (h) failed to meet payroll and other obligations; (i) made cash advances to shareholders, officers and directors; (j) was insolvent at the time of several transactions complained of herein; (k) was undercapitalized; and, therefore, there exists a unity of interest and ownership between each of these named Defendants such that any separateness between them has ceased to exist and that to adhere to the fiction of their separate identities would result in injustice.

////

COMPLAINT FOR DAMAGES                                                  3

## GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

12.   On or about September 26, 2010, Plaintiff offered to sell Defendants approximately 50 kilos of rough emeralds (hereinafter "Emeralds") with an appraised value of five hundred million dollars (USD $500,000,000) for a sale price of fifty million dollars (USD $50,000,000) as representative on behalf of Super Versatil Emerald Corporation located in Brazil ("Seller"). The Emeralds were obtained from the Carnaiba Emerald Mine, Bahia, Brazil. All dates and times set forth herein are Pacific Standard time.

13.   Plaintiff sent Oviedo photographs depicting the Emeralds and informed him that an appraisal will be issued and provided to him or a desired group. Plaintiff also informed Oviedo that the Emeralds were to be held in a vault in Sao Paulo, Brazil under sealed parcel container and possession of the Emeralds was to be given when funds were received.

14.   The sale price was to be paid in cash backed by an irrevocable stand-by letter of credit to be payable in 60 days.

15.   Plaintiff provided wire instructions and information for his account at Bank of America ("BOA").

16.   On October 2, 2010, Plaintiff provided Oviedo with information on the appraisal and costs of same.

17.   On October 3, 2010, Oviedo sent an email to Plaintiff accepting the offer and informing him that he would be purchasing the Emeralds on behalf of purchaser, Quantum, Inc., a Panamanian company.

18.   On October 3, 2010, Oviedo requested a Safekeeping Receipt ("SKR") under the name Quantus, Inc., in c/o Ledwin E. Oviedo. On or about October 4, 2010, Plaintiff assisted Seller to prepare a SKR providing Quantum, Inc. and Oviedo with one hundred percent control over the Emeralds with restrictions on transfer of the Emeralds pursuant to the agreement between the parties.

19.   On October 3, 2010, Oviedo provided sample verbiage to be used in an SBLC that would be provided by Oviedo the following day.

20.   On October 4, 2010, Plaintiff provided Oviedo with a rough draft presentation package for the Emeralds entitled, "Ledwin Oviedo-Emerald Collection" including pictures, information on the mine, comparables, and information on appraiser, and Oviedo forwarded comments for the presentation package later that day.

21. On October 5, 2010 at 10:46 a.m., Oviedo sent Plaintiff an email with an attached stand-by letter of credit apparently issued by ABN Amro Bank N.V. on October 4, 2010 (hereinafter "SBLC"). In the aforementioned email, Oviedo invited Plaintiff to contact Mr. Michael Van Der Muller at Amro Bank and provided a telephone number. In addition, Oviedo forwarded a Euroclear Bank document that allegedly confirmed the validity of the SBLC.

22. On October 5, 2010 at 12:23 p.m., Plaintiff sent Oviedo four appraisal certificates for a total cost of USD $24,000 payable in 60 days including notary and attorney verifications of signature and original documents, translation of documents, stationary and printing costs totaling USD $727 and requested that Oviedo reimburse such costs advanced into Plaintiff's BOA account.

23. On October 5, 2010 at 12:39 p.m., Oviedo sent an email to Plaintiff agreeing to make the deposit to Plaintiff's BOA account by the next day, that Oviedo would pay on or before the 60th day from that day, have payment on Oviedo's agenda out 40 days, and that Oviedo intended to use the same SBLC for other purchases (at least 10 in the next 12 months).

24. On October 5, 2010, Plaintiff prepared an invoice to Oviedo including a description of the Emeralds, quantity and price, which indicated the due date for payment on or before December 3, 2010. The invoice also stated that the Emeralds shall not be moved until full cash payment is made or the SBLC has been cashed.

25. On October 5, 2010, at 1:30 p.m., Plaintiff sent Oviedo the finalized signed and sealed documents including: SKR, appraisal certificates from Professor Miguel Carlos Zenetos in the amount of USD $500,000,000. Plaintiff followed up with a revised SKR.

26. On November 29, 2010, Plaintiff requested a financial update on the payment of the Emeralds and informed Oviedo that the sellers were expecting a payment by Friday December 3, 2010. At or about this time Oviedo requested permission to transport the Emeralds to Geneva for inspection. Plaintiff informed Oviedo that he or a purchaser would need to make a 10% deposit to transport the Emeralds to another location.

27. On December 2, 2010, Plaintiff informed Oviedo that he had received a call from the attorney requesting payment or a written request for an additional 30 day extension with a 10% deposit by the next

COMPLAINT FOR DAMAGES                                                                                                                5

day. He also invited a telephone conference if necessary.

28. On December 2, 2010, at 9:03 p.m., Oviedo responded that Oviedo received the documents but appeared to be having problems with the purchase. Oviedo failed to pay for the purchase of the Emeralds on or before December 3, 2010 as agreed.

29. At or about that time, Plaintiff attempted to contact Mr. Van Der Muller, was unable to make contact with such individual at such number provided and then contacted ABN AMRO Bank (hereinafter "Amro Bank"). Plaintiff was informed by a representative at AMRO Bank that the SBLC was a counterfeit. The bank representative confirmed that Mr. Oviedo and LOIG did not have an account with Amro Bank, that the signatory on the SBLC was not authentic and other stamps and names were fake. Furthermore, the representative confirmed that the Euroclear Bank document was likely a counterfeit as well.

30. On December 7, 2010, Oviedo sent an email to Plaintiff making excuses for failure to purchase the Emeralds. Prior to that time, Oviedo never requested a physical inspection of the Emeralds. This could have been arranged with a written request and payment to move the Emeralds, if necessary.

31. As a proximate and legal result of Defendants misrepresentations, counterfeit SBLC and breach of contract, Plaintiff sustained the following damages:

| | |
|---|---:|
| Lost Commission on sale of Emeralds: | $5,000,000.00 |
| Lost Earnings for at least five Days at $2,000.00 per day: | $ 10,000.00 |
| Roundtrip airplane tickets from Los Angeles to Brazil: | $ 3,570.60 |
| Hotel in Brazil for six nights: | $ 594.00 |
| Hotel at Los Angeles Airport before flight: | $ 120.00 |
| Hotel LAX after return flight: | $ 551.00 |
| Personal Expenses: Transportation and Food: | $ 3,000.00 |
| Payment to Professor Zenetos for Appraisal: | $ 10,000.00 |
| Return flight for Ms. Zumba (Brazil to Los Angeles): | $ 1,615.88 |
| Actual Damages: | $5,029,451.48 |

**FIRST CAUSE OF ACTION**
**RICO CLAIM**
**18 U.S.C. § 1962(c)**
**(Against Defendant Oviedo and DOES 1 through 50)**

32. Plaintiff repeats and re-alleges paragraphs 1 through 31 as if fully set forth herein.

33. Upon information and belief, LOIG is a criminal enterprise as defined in 18 U.S.C. §§ 1961(4) and 1962(c). Upon information and belief, Oviedo and DOES 1 through 50 used LOIG as an enterprise which affected interstate commerce through the use of counterfeit bank documents, international telephone lines and emails as described above, which caused Plaintiff to travel to Brazil in an attempt to close a large gem transaction which caused him damages.

34. Upon information and belief, Defendants' enterprise has affected interstate and foreign commerce through a pattern of racketeering through the use of counterfeit standby letters of credit, including, but not limited to the subject SBLC and other counterfeit bank documents such as the Euroclear Bank document.

35. Upon information and belief, each member of the enterprise is a "person" as defined in § 1961(3) and was associated in the enterprise through a common racketeering, including violations of federal fraud, mail and wire fraud and counterfeiting statutes, and common law fraud.

36. In furtherance of the scheme Defendants committed, among others, the following violations of 18 U.S.C. §§ 471, 472 and 473:

    a. Upon information and belief, Defendants, with the intent to defraud falsely made, forged, counterfeited, and altered bank documents in the form of the SBLC and Euroclear Bank documents, which were passed, dealt and uttered to Plaintiff, Plaintiff's clients and other individuals and entities for the purpose of attempting to purchase Emeralds, real estate, expensive artwork, obtain loans and trade commercial paper.

37. In furtherance of the scheme Defendants committed, among others, the following violations of 18 U.S.C. § 1341:

    a. Upon information and belief, for the purpose of executing and attempting to execute the scheme to defraud and with the intent to obtain money or property by means of false and fraudulent pretenses, representations and promises, and counterfeit bank documents, Defendants promised to purchase Emeralds, real estate, expensive artwork, obtain loans and trade commercial paper from Plaintiff, Plaintiff's clients and other individuals and entities.

38. In furtherance of the scheme Defendants committed, among others, the following violations of 18 U.S.C. § 1343:

    a. Upon information and belief, for the purpose of executing and attempting to execute the scheme to defraud, the Defendants repeatedly made and caused to be made telephone calls, sent emails, and made use of other wire facilities in interstate and foreign commerce, in repeated violation of 18 U.S.C. § 1343. They include, without limitation telephone communications and emails by and between Oviedo and Plaintiff, between New York and San Diego and New York and Sao Paulo, Brazil to negotiate the terms of the purchase of the Emeralds, and made arrangements for the appraisal, SBLC, SKR and the package for submittal to the purchaser. In addition, Defendants sent emails to Plaintiff's clients and other third parties as set forth below by using wire facilities in interstate and foreign commerce in repeated violation of 18 U.S.C. § 1343.

39. In furtherance of the scheme, Defendants committed, among others, the following violations of 18 U.S.C. § 1344:

    a. Upon information and belief, Defendants knowingly executed a scheme or artifice to defraud a financial institution or attempted to obtain moneys, funds, credits, assets or other property owned by or under the custody or control of a financial institution by means of false or fraudulent pretenses, representations or promises through use of forged, counterfeited, and altered bank documents in the form of the SBLC and Euroclear Bank documents for the purpose of attempting to purchase Emeralds in violation of 18 U.S.C. § 1344. In addition, Defendants sent emails to Plaintiff's clients and other third parties as set forth below and in Plaintiff's complaint by using wire facilities in interstate and foreign commerce in repeated violation of 18 U.S.C. § 1344.

40. Upon information and belief, the purpose of these communications was to fraudulently induce Plaintiff's reliance and release of the Emeralds, and to prevent Plaintiff's and Seller's discovery of the fraud.

41. Each of the aforesaid violations of counterfeiting, fraud, and mail and wire fraud and bank fraud statutes: 18 U.S.C. §§ 471, 472, 473, 1341, 1343 and 1344 constitutes an instance of racketeering activity as defined in 18 U.S.C § 1961(5).

42. The Defendants used telephone and email communications and acted: (1) to employ a device,

COMPLAINT FOR DAMAGES     8

scheme or artifice to defraud; (2) to obtain money by means of untrue statements of material facts and omissions to state material facts necessary to make statements made not misleading, regarding the nature of the SBLC, and (2) to engage in a transaction, practice, or course of business which operated and would operate as a fraud or deceit upon the Plaintiff and Seller.

43. Upon information and belief, Oviedo, LOIG, and DOES 1 through 50 conspired with one another to violate provisions of 18 U.S.C. §§ 471, 472, 473, 1341, 1343, 1344, and 1962(c).

44. Each of the foregoing violations of 18 U.S.C. §§ 471, 472, 473, 1341, 1343, and 1344 constitutes an instance of racketeering activity as defined in 18 U.S.C. § 1961(5).

*Pattern of Racketeering Activity and additional Fraud Victims*

45. Plaintiff is informed and believes that Defendants committed fraud and passed, dealt, and uttered other similar counterfeit standby letters of credit in other transactions against some of Plaintiff's clients and other individuals and entities affecting interstate commerce prior to the instant transaction:

    a. Upon information and belief, on or about August 2010, Oviedo by and through his entity, LOIG, issued a separate counterfeit standby letter of credit in the amount of USD $65,000,000 issued by AMRO Bank in favor of Oviedo dated August 31, 2010, in an attempt to purchase real estate in Philadelphia for a purchase price of USD $53,475,000. The standby letter of credit included the same fake forged or counterfeit signature line for Maarten Mol. On August 16, 2010, Oviedo sent an email to one of Plaintiff's clients, Tom Kelly, in which he outlined his scheme whereby an unknown borrower would deposit USD $5,000,000 into an escrow account and then within 72 hours of escrow deposit at the lender's request, AMRO Bank would issue a standby letter of credit in the amount of USD $65,000,000 in favor of borrower and wiring instructions in order to wire the borrowers escrow deposit of USD $5,000,000. Similar to the instant transaction, Oviedo used a standby letter of credit template falsely represented to be issued by Amro Bank with almost identical language as the instant case and similar representations that the standby letter of credit would be verified through Euroclear Bank.

    b. Upon information and belief, on September 21, 2010, Oviedo by and through his entity, LOIG, emailed to Plaintiff (as agent for the seller) a sample template for a standby letter of

COMPLAINT FOR DAMAGES             9

credit to be issued by AMRO Bank in an attempt to purchase a masterpiece painting. The template was almost identical to the template used in the instant case. On September 24, 2010, Oviedo by and through his entity, LOIG, mailed and/or emailed a letter of intent to one of Plaintiff's clients, Joao Teixeira outlining the purchase of an original masterpiece, "David and Goliath" by Michelangelo Memsz da Caravaggio ("Masterpiece"), for the purchase price of USD $100,000,000, buyer to pay cash within 60 days backed by a standby letter of credit in the amount of USD $100,000,000. Buyer was instructed to advance USD $5,000,000 to be paid by the 30th day of purchase and the remaining $95,000,000 to be paid by the 60th day from purchase.

    c.    Upon information and belief, on or about September 2010, Oviedo by and through his entity, LOIG, made contact with Plaintiff's client, Sam Natt, with respect to working together to fund investments, obtain loans to fund projects and trade in commercial paper. On or about September 2010, Oviedo sent Mr. Natt a sample template for a standby letter of credit to be issued by AMRO Bank with almost identical language used in the instant case. On or about September, 2010, sent Mr. Natt via mail or email a counterfeit standby letter of credit in the amount of USD $65,000,000 dated August 31, 2010 issued by AMRO Bank in his favor. The standby letter of credit had the same counterfeit signatory, stamps and amounts. On September 24, 2010, Mr. Oviedo by and through his entity, LOIG, drafted and mailed and/or emailed a letter to Darney Butler in Dallas Texas requesting a one year loan facility against his standby letter of credit in the amount of USD $65,000,000 issued August 30, 2010. On September 28, 2010, Oviedo confirmed via email to Mr. Natt that the SBLC is "cash back." Plaintiff is informed and believes that on October 19, 2010, Mr. Natt emailed Oviedo and confirmed that he was approved for an 80% loan to value non-recourse loan based upon the standby letter of credit. Plaintiff is informed and believes that Defendants used the same USD $65,000,000 standby letter of credit in each of the three additional foregoing schemes to defraud.

46. The multiple acts of racketeering activity by the Defendants were interrelated, part of a common and continuous pattern of fraudulent schemes, and were perpetrated for the same or similar purpose, thus constituting a pattern of racketeering activity as defined in 18 U.S.C. § 1961(5).

47. By reason of the foregoing pattern of racketeering, plaintiff has been damaged in his business and property and is entitled to damages pursuant to 18 U.S.C. § 1964(c).

48. As a proximate and legal result of Defendants' misrepresentations and counterfeit SBLC involving the attempted purchase of the Masterpiece from Mr. Joao Teixeira, Plaintiff sustained the following consequential damages plus damage to reputation of undetermined amount:

Lost Commission on sale:                                          $5,000,000.00

Plaintiff would not have entered into an agreement to sell the Masterpiece, which would have paid a $5,000,000 commission, incurred attorney's fees, and damaged his reputation with the seller if Defendants had not presented a counterfeit SBLC, misrepresented the validity of the SBLC or provided the SBLC as collateral for payment of the purchase price.

49. As a proximate and legal result of Defendants' misrepresentations and counterfeit SBLC involving the transaction dealing with Mr. Sam Natt, Plaintiff sustained the following consequential damages:

Lost Commissions on closed transactions estimated to be $200,000 per month.

Plaintiff would not have referred Mr. Oviedo to his client Mr. Natt, which would have paid a $5,000,000 commission, incurred attorney's fees, and damaged his reputation with Mr. Natt if Defendants had not presented a counterfeit SBLC, misrepresented the validity of the SBLC or provided the SBLC as collateral for the transactions.

**SECOND CAUSE OF ACTION**
**RICO CLAIM**
**18 U.S.C. § 1962(d)**
**(Against All Defendants and DOES 1 through 50)**

50. Plaintiff repeats and re-alleges paragraphs 1 through 49 as if fully set forth herein.

51. Upon information and belief, by reason of the foregoing acts and events, Defendants and DOES 1 through 50, willfully and knowingly conspired and continue to conspire to violate the provisions of 18 U.S.C. §§ 1962(c) through each party's agreement to participate in the affairs of the enterprise through the aforementioned acts comprising a pattern of racketeering.

52. Each defendant agreed to commit at least two predicate acts.

53. By reason of the foregoing conspiracy, plaintiff Longo has been damaged in his business and property and is entitled to damages pursuant to 18 U.S.C. § 1964(c).

### THIRD CAUSE OF ACTION
### FRAUD
### California Common Law
### (Against All Defendants and DOES 1 through 50)

54. Plaintiff repeats and re-alleges paragraphs 1 through 53 above as if fully set forth herein.

55. Upon information and belief, it is alleged that Defendants made misrepresentations and/or omissions of material facts to Plaintiff as described above in an attempt to purchase the Emeralds without any funds or ability to purchase same and passed, uttered and used a counterfeit SBLC and Euroclear bank document representing it to be backed by cash in AMRO Bank. Plaintiff is informed and believes that Defendants intended to steal the Emeralds without paying valid consideration.

56. Upon information and belief, it is alleged that Defendants intended or had reason to expect that Plaintiff would rely upon such material misrepresentations and/or omissions set forth above.

57. Upon information and belief, it is alleged that Defendants knew that such material misrepresentations and/or omissions were false or acted in reckless disregard of their falsity at the time such misrepresentations and/or omissions were made.

58. Upon information and belief, it is alleged that Defendants had the intent to deceive and made such material misrepresentations and/or omissions for the purposes of inducing Plaintiff to rely upon them or were reckless in making such misrepresentations and omissions.

59. Upon information and belief, it is alleged that each of the material misrepresentations and omissions concerned a then existing fact, and each of these misrepresentations and/or omissions was false.

60. Plaintiff did not know that the material misrepresentations or omissions were false at the time such misrepresentations and/or omissions were made.

61. As a direct and proximate result of Defendants' misrepresentations and/or omissions, Plaintiff sustained damages in an amount to be proven at trial.

////

////

62. Upon information and belief, Defendants have acted intentionally and despicably with oppression, fraud and malice toward Plaintiff. Plaintiff, therefore, is entitled to an award of punitive damages for the sake of example and by way of punishing Defendants pursuant to California Civil Code § 3294.

### FOURTH CAUSE OF ACTION
### CIVIL CONSPIRACY
### California Common Law
### (Against All Defendants and DOES 1 through 50)

63. Plaintiff repeats and re-alleges the allegations in paragraphs 1 through 62 above as if fully set forth herein.

64. Upon information and belief, it is alleged that Defendants entered into a conspiracy with the intent to agree or conspire to commit violations of the federal and state laws and common law prohibitions against fraud and counterfeiting, as alleged herein to the detriment of Plaintiff.

65. Upon information and belief, it is alleged that the conspiracy consisted of the process by which Defendants agreed to participate in, and did participate in, unlawfully in an attempt to purchase the Emeralds without any funds or ability to purchase same and used a counterfeit SBLC and Euroclear Bank document which violated federal and state laws.

66. Upon information and belief, it is alleged that the Defendants knowingly joined and conspired with each other, and with others, to commit violations of the federal and state laws against fraud, and counterfeiting as alleged herein to the detriment of Plaintiff.

67. Upon information and belief, it is alleged that each of the actions alleged herein on the part of Defendants was an overt act undertaken in furtherance of the conspiracy.

68. Upon information and belief, it is alleged that each Defendant was a direct, necessary, and substantial participant in the conspiracy and common course of conduct complained of herein.

69. As a direct, foreseeable and proximate result of Defendants' wrongful conduct, Plaintiff has suffered damages in an amount to be proven at trial.

70. Upon information and belief, Defendants have acted intentionally and despicably with oppression, fraud and malice toward Plaintiff. Plaintiff, therefore, is entitled to an award of punitive

damages for the sake of example and by way of punishing Defendants pursuant to California Civil Code § 3294.

### FIFTH CAUSE OF ACTION
### BREACH OF WRITTEN CONTRACT
### California Common Law
### (Against Defendants Oviedo and LOIG)

71. Plaintiff repeats and re-alleges paragraphs 1 through 70 above as if fully set forth herein.

72. On October 5, 2010, Plaintiff and Defendants entered into a written agreement to purchase the Emeralds for USD $50,000,000 via email.

73. Defendants breached the written agreement by failing to pay the USD $50,000,000 by cash or valid standby letter of credit by December 3, 2010 as promised.

74. Defendants breach of the written contract, as alleged herein, proximately caused legal harm and damages to Plaintiff, including interests and costs, all of which are recoverable by Plaintiff in an amount to be proven at the time of trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants and DOES 1 through 50, inclusive, and each of them as follows:

A. On the First and Second Causes of Action:

1. That Plaintiff recovers his consequential damages related to the purchase of the Emeralds, with prejudgment interest, against Defendants, jointly and severally, in an amount to be determined but not less than $5,029,451.48, trebled pursuant to 18 U.S.C. 1964(c);

2. That Plaintiff recovers his consequential damages related to the purchase of the Masterpiece, with prejudgment interest, against Defendants, jointly and severally, in an amount to be determined but not less than $5,000,000, trebled pursuant to 18 U.S.C. 1964(c);

3. That Plaintiff recovers his consequential damages related to the transaction with Mr. Natt, with prejudgment interest, against Defendants, jointly and severally, in an amount to be determined but not less than $1,000,000, trebled pursuant to 18 U.S.C. 1964(c);

4. That Plaintiff recovers his reasonable attorneys' fees;

5. That Plaintiff recovers his costs of this suit; and

6. That Plaintiff is granted such other and further relief as the Court deems just and proper.

B. On the Third and Fourth Causes of Action:

1. That Plaintiff recovers his consequential damages, with prejudgment interest, against Defendants, jointly and severally, in an amount to be determined but not less than $5,029,451.48;

2. That Plaintiff recovers his consequential damages related to the purchase of the Masterpiece, with prejudgment interest, against Defendants, jointly and severally, in an amount to be determined but not less than $5,000,000, trebled pursuant to 18 U.S.C. 1964(c);

3. That Plaintiff recovers his consequential damages related to the transaction with Mr. Natt, with prejudgment interest, against Defendants, jointly and severally, in an amount to be determined but not less than $1,000,000, trebled pursuant to 18 U.S.C. 1964(c);

4. That Plaintiff is awarded punitive damages, against Defendants, in an amount to be proven at the time of trial;

5. That Plaintiff recovers his costs of this suit; and

6. That Plaintiff is granted such other and further relief as the Court deems just and proper.

C. On the Fifth Cause of Action:

1. That Plaintiff recovers his compensatory damages, with interest, against Defendants, and each of them, in an amount to be determined at the time of trial;

2. That Plaintiff recovers his costs of this suit; and

3. That Plaintiff be granted such other and further relief as the Court deems just and proper.

DATED: January 4, 2011                    JURGENSEN VILLASENOR, APC


                                          s/ Christopher A. Villasenor
                                          Christopher Villasenor, Esq.
                                          Attorney for Plaintiff
                                          RICARDO A. CAMPBELL

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
RICARDO A. CAMPBELL

**DEFENDANTS**
LEDWIN E. OVIEDO, and LOIG, LLC, et al.

(b) County of Residence of First Listed Plaintiff **San Diego**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Christopher A. Villasenor, Jurgensen Villasenor, APC, 3111 Camino Del Rio North #310, San Diego, CA 92108 619-563-4150

Attorneys (If Known)
**'11CV0010 BTM NLS**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|   | PTF | DEF |   | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☒ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | | | | |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare / ☐ 530 General ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other ☐ 550 Civil Rights | ☐ 462 Naturalization Application ☐ 463 Habeas Corpus - Alien Detainee | | |
| | ☐ 446 Amer. w/Disabilities - Other / ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
18 USC 1962 (c)
Brief description of cause:
RICO

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 11,029,451.48
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____ DOCKET NUMBER _____

DATE: 01/04/2011
SIGNATURE OF ATTORNEY OF RECORD: s/ Christopher A. Villasenor

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____