1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD A. CAMPBELL,<br><br>      Plaintiff,<br> v.<br>LEDWIN OVIEDO, et al.,<br><br>      Defendants. | Case No. 11cv10-BTM (NLS)<br><br>**ORDER RE MOTION TO DISMISS OR TRANSFER VENUE** |

Defendants move to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2); to dismiss for lack of venue pursuant to Fed. R. Civ. P. 12(b)(3); and to dismiss under the doctrine of forum non conveniens; or in the alternative, to transfer for convenience pursuant to 28 U.S.C. § 1404(a). For the reasons that follow, this motion is **DENIED**.

## I. BACKGROUND

Plaintiff is a citizen of California. Defendant Ledwin Oviedo is a citizen of New Jersey and Defendant LOIG is a Delaware limited liability company with its principal place of business in New York.

Plaintiff brings claims for RICO violations, common law fraud, and common law conspiracy. Plaintiff alleges that Defendants engaged in a series of fraudulent acts involving the use of a counterfeit standby letter of credit to fund various investment projects.

1    Plaintiff's primary allegation relates to a sale of emeralds valued at $500,000,000

2   ("emerald transaction"). (Compl. ¶ 12)  On or about September 26, 2010, Plaintiff offered to

3   sell Defendants these emeralds.  *Id.*  In a September 30, 2008 email, Plaintiff confirmed this

4   offer and provided banking coordinates for payments to Plaintiff's bank located in San Diego,

5   California.   (Campbell Decl. ¶ 3, Ex. A)   Defendants were to pay $50,000,000 for the

6   emeralds in cash backed by an irrevocable stand-by letter of credit to be payable in sixty

7   days.  *Id.*  On October 3, Defendants accepted this offer.  (Compl. ¶ 5)  Plaintiff alleges that

8   Defendants failed to pay for the purchase of the emeralds and that documents involved in

9   the purchase, including the stand-by letter of credit, were fraudulent.  (Compl. ¶ 28-29)

10    In connection with Plaintiff's RICO claim, Plaintiff alleges that Defendants engaged

11   in a pattern of racketeering activity by using similar counterfeit standby letters of credit in at

12   least three other transactions. (Compl. ¶ 45)  Two of these transactions involved contacts

13   with California.  First, Plaintiff alleges that Mr. Oviedo emailed a sample letter of credit in

14   connection with a purchase of a masterpiece painting while he was in San Diego, California

15   ("masterpiece transaction").   (Compl. ¶ 45(b))  Second, Plaintiff alleges that Mr. Oviedo

16   directly contacted Plaintiff's client, Sam Nett, the President of AGO holdings, with respect to

17   several investment projects and sent him a counterfeit standby letter of credit ("AGO

18   transaction").  (Compl. ¶ 45(c))  Mr. Nett is a resident of Los Angeles, California and has a

19   Los Angeles phone number.  (Campbell Decl. ¶ 15, 18)  Mr. Oviedo acknowledges that he

20   exchanged emails and telephone calls with Mr. Nett regarding a potential business deal.

21   (Oviedo Reply Decl. ¶ 19)

22

23    **II. DISCUSSION**

24

25   **A. Personal Jurisdiction**

26

27    Fed. R. Civ. P. Rule 12(b)(2) permits a court to dismiss a suit for lack of personal

28   jurisdiction over a defendant. "The burden of proof is on the plaintiff to show that jurisdiction

1    is appropriate, but in the absence of an evidentiary hearing, the plaintiff need only make a

2    prima facie showing of jurisdictional facts." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir.

3    1990). The "court may consider evidence presented in affidavits to assist in its determination

4    and may order discovery on the jurisdictional issues." *Doe v. Unocal Corp.*, 248 F.3d 915,

5    922 (9th Cir. 2001).

6         Generally, jurisdiction must comport with both the long-arm statute of the state in

7    which the district court sits, as well as the constitutional requirements of due process. *Mattel,*

8    *Inc., v. Greiner & Hausser GmbH*, 354 F.3d 857, 863 (9th Cir. 2003). The Ninth Circuit has

9    recognized that the California long-arm statute, Cal. Code Civ. Proc. § 410.10, allows Courts

10   to exercise jurisdiction consistent with the limits of the Due Process Clause of the

11   Constitution, "so a federal court may exercise personal jurisdiction if doing so comports with

12   federal constitutional due process." *Boschetto v. Hansing*, 539 F.3d 1011, 1015-16 (9th Cir.

13   2009).

14

15        1.   Personal Jurisdiction Based On RICO's Nationwide Service Of Process

16   Provision

17

18        Plaintiff argues that because RICO has provisions authorizing nationwide service of

19   process, a defendant need only maintain minimum contacts with the United States as a

20   whole, rather than any particular state, for a federal court to exercise personal jurisdiction.

21   While the circuits are split, this is not the rule in the Ninth Circuit. *See Butcher's Union Local*

22   *No. 498 v. SDC Invest., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986); *Bray v. Kendall*, No. 08-0535

23   SC, 2010 U.S. Dist. LEXIS 281, at *7-13 (N.D. Cal. Jan. 5, 2010).

24        In *Butcher's Union*, the Ninth Circuit held:

25        As section 1965(b) makes clear, the right to nationwide service in RICO suits is not
          unlimited.  For nationwide service to be imposed under section 1965(b), the court
26        must have personal jurisdiction over at least one of the participants in the alleged
          multidistrict conspiracy and the plaintiff must show that there is no other district in
27        which a court will have personal jurisdiction over all of the alleged co-conspirators.

28   *Butcher's Union Local No. 498*, 788 F.2d at 539.   Although the Ninth Circuit has not

                                                  3

1  addressed the RICO nationwide service of process provision relied upon by Plaintiff, 18

2  U.S.C. § 1965(d), Plaintiff has not provided any authority for the proposition that the Ninth

3  Circuit would interpret this provision differently.  Absent such authority, the Court agrees with

4  the court in *Bray* that "[g]iven the Ninth Circuit's decision with respect to subsection (b), its

5  silence with respect to subsection (d), and other circuit courts' rejection of nationwide service

6  under subsection (d), this Court will not allow Plaintiff to rely on subsection (d) alone to

7  establish jurisdiction."   *Bray*, 2010 U.S. Dist. LEXIS 281, at *12-13.

8

9                          2.  Minimum Contacts With California

10

11        The Court has specific jurisdiction over a defendant who has "certain minimum

12  contacts" with the forum state "such that the maintenance of the suit does not offend

13  traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S.

14  310, 316 (1945) (internal quotation marks omitted).  The "minimum contacts" required to

15  assert specific jurisdiction are analyzed using a three-prong test: (1) the non-resident

16  defendant must purposefully direct its activities towards, or consummate some transaction

17  with, the forum or a resident thereof, or perform some act by which it purposefully avails itself

18  of the privilege of conducting activities in the forum, thereby invoking the benefits and

19  protections of its laws; (2) the claim must be one which arises out of or results from the

20  defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable.

21  *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987).  "The plaintiff bears the burden of

22  satisfying the first two prongs of the test." *Schwarzenegger v. Fred Martin Motor Co.*, 374

23  F.3d 797, 802 (9th Cir. 2004). If those prongs are met, "the burden then shifts to the

24  defendant to present a compelling case that the exercise of jurisdiction would not be

25  reasonable." *Id.* (internal quotation marks omitted).

26  //

27  //

28  //

                                         4                          11cv10-BTM (NLS)

i.  Purposeful Direction

Because Plaintiff's claims sound in tort, the Court applies the purposeful direction test in analyzing the first prong of the minimum contacts test.  *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  To satisfy this test, Plaintiff must establish that Defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

Plaintiff has established a prima facie case that these elements are satisfied.  First, Plaintiff has sufficiently alleged that Defendants acted intentionally.  Second, Defendants do not challenge Plaintiff's contention that the letters of credit for the masterpiece transaction and the AGO transaction were sent to California citizens in California.  Plaintiff alleges that these letters of credit were sent to induce reliance to contract with Defendants, consistent with a pattern of racketeering activity.[1]  Such "inducement of reliance in California is a sufficient act within California to satisfy the requirement of minimum contacts where the cause of action arises out of that inducement."  *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1288 (9th Cir. Cal. 1977).  Third, Defendants do not dispute that proceeds of the emerald sale would be paid to a bank account in San Diego. Thus, Defendants knew that the "brunt of the harm" alleged in Plaintiff's complaint would be suffered in California.  *Dole Food Co.*, 303 F.3d at 1113.

ii.  Arising out of or Relating to the Forum Activities

The second prong of personal jurisdiction analysis is met here.  As discussed above, the contacts between Defendants and the forum state clearly relate to Defendants alleged

---

[1] For the first time in their reply brief, Defendants allege that Plaintiff has failed to state a RICO claim.  The Court will not consider this argument.  *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. Cal. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

11cv10-BTM (NLS)

1  fraudulent scheme.

2

3              iii.  Reasonableness

4

5        The following factors are to be considered in determining whether the exercise of

6  jurisdiction over a nonresident defendant is reasonable:

7          1) the extent of the defendant's purposeful interjection into the forum state's affairs;
           2) the burden on the defendant; 3) conflicts of law between the forum and defendant's
8          home jurisdiction; 4) the forum's interest in adjudicating the dispute; 5) the most
           efficient judicial resolution of the dispute; 6) the plaintiff's interest in convenient and
9          effective relief; and 7) the existence of an alternative forum.

10  *Roth v. Garcia Marquez*, 942 F.2d 617, 623 (9th Cir. 1991).

11        Nearly all of these factors favor the reasonableness of jurisdiction in California.  First,

12  as noted above, Defendants have purposefully directed activities at California.  Second,

13  Defendants assert that because Defendants "both have offices in New York, . . . it would be

14  inconvenient for Defendants to litigate this matter in California."  (Mem. at 16)  Yet,

15  Defendants express great willingness to litigate this controversy in Brazil.  Relative to the

16  burden of litigating this case in a foreign country, requiring Defendants to travel to California

17  is not unreasonable.  Third, Defendants raise no conflict of law between California and

18  Defendants' home jurisdictions.  Fourth, "California has a strong interest in providing a forum

19  for its residents and  citizens who are tortiously injured."  *Dole Food Co.*, 303 F.3d at 1115-

20  16.   Fifth, this dispute appears to center on communications between Plaintiff and

21  Defendants, citizens of different states.  Although witnesses and evidence related to whether

22  the letter of credit and other documents at issue were fraudulent may be located outside of

23  the country, the Court cannot conclude that another jurisdiction would be significantly more

24  efficient than California.  Sixth, Defendants do not argue that it would be more convenient

25  for Plaintiff to litigate in their home jurisdictions and they "dare not argue that it would be

26  more convenient for [Plaintiff] to litigate outside the United States."  *Roth*, 942 F.2d at 624.

27  Finally, Defendants' home jurisdictions are not demonstrably better than California, and as

28  discussed below, Defendants have not established that their preferred forum, Brazil, is

1   adequate.  Balancing these factors, the Court concludes that Defendants have not met their

2   burden of establishing that jurisdiction in California would not be reasonable.

3

4   **B.  Venue**

5

6        In a civil action where jurisdiction is not founded solely on diversity of citizenship,

7   venue is proper in a judicial district in which a substantial part of the events or omissions

8   giving rise to the claim occurred.  28 U.S.C. § 1391(b)(2).  When deciding a motion under

9   Fed. R. Civ. P. 12(b)(2), the pleadings need not be accepted as true, and the district court

10  may consider facts outside of the pleadings.  *Tercica, Inc. v. Insmed Inc.*, No. C 05-5027

11  SBA, 2006 U.S. Dist. LEXIS 41804, at *23 (N.D. Cal. June 9, 2006).

12        Defendants do not challenge Plaintiff's contentions that (1) Defendants entered into

13  a contract where payment for the emerald transaction would be made to Plaintiff's bank

14  account in San Diego; (2) Defendants sent Plaintiff a standby letter of credit to be used in the

15  masterpiece transaction when he was in San Diego; and (3) Mr. Oviedo communicated via

16  email and telephone with a California resident about the Nett transaction.  These events

17  sufficiently give rise to Plaintiff's claims to support venue in the Southern District of California

18  under § 1391(b)(2).

19        Venue founded on § 1391(b)(2) does not require that a majority of the events have

20  occurred in the district where suit is filed, nor does it require that the events in that district

21  predominate.  *Rodriguez v. California Highway Patrol*, 89 F. Supp. 2d 1131, 1136 (N.D. Cal.

22  2000).  Thus, Mr. Oviedo's declaration that "most of my contacts with Plaintiff were made by

23  telephone and email between New York and Brazil" (Oviedo Decl. ¶ 27) does not defeat the

24  conclusion that the Southern District of California is a proper venue for this action.

25

26  **C.  Forum Non Conveniens**

27

28        "The doctrine of forum non conveniens is a drastic exercise of the court's 'inherent

power'" because, unlike a mere transfer of venue, it results in the dismissal of a plaintiff's case." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011).  To prevail on a motion to dismiss based upon forum non conveniens, a defendant bears the burden of demonstrating an adequate alternative forum, and that the balance of private and public interest factors favors dismissal.  *Id.*

An alternative forum is deemed adequate if: (1) the defendant is amenable to process there; and (2) the other jurisdiction offers a satisfactory remedy.  *Id.* at 1225.  Neither factor is satisfied here.  First, Defendants are citizens of the United States.  They do not contend that they would be amenable to process in Brazil.  Second, Defendants' briefing contains the conclusory statement that "Brazilian law provides a remedy."  (Mem. at 13)  However, Defendants do not any point to any particular Brazilian law that would provide this remedy.  Because Defendants have failed to meet their burden of demonstrating that Brazil is an adequate alternative forum, the Court need not reach the balancing of the private and public interest factors.

## D.  Transfer

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  In determining whether transfer is appropriate in a particular case, courts consider private and public factors affecting the convenience of the forum.  Private factors include:  (1) the plaintiff's choice of forum, (2) the convenience of the witnesses and parties, (3) the ease of access to sources of proof, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the state that is most familiar with the governing law, and (8) the availability of compulsory process to compel attendance of unwilling non-party witnesses.  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d

834, 843 (9th Cir. 1986).  Public factors include court congestion, local interest in having localized controversies decided at home, the interest in avoiding unnecessary conflicts of laws, and the interest in trying the case in a forum familiar with the applicable law.  *Id.* at 843.

Defendants request to transfer venue to a district court in New York.  (Mem. at 16) The gravamen of this request rests in Defendants having offices in New York and it being inconvenient for them to litigate the matter in California.  *Id.*  Absent any engagement with the factors listed above, Defendants' desire to litigate in a forum that is convenient to them is not sufficient to support a transfer of venue.

## III. CONCLUSION

Defendants' motion to dismiss for lack of personal jurisdiction, to dismiss for lack of venue, to dismiss under the doctrine of forum non conveniens, or in the alternative, to transfer for convenience is **DENIED**.

**IT IS SO ORDERED.**

DATED:  September 9, 2011

Honorable Barry Ted Moskowitz
United States District Judge